UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID OSCAR AGUILA LOPEZ,

*Petitioner*,

v. Case No. 3:26-cv-1070-JEP-SJH

WARDEN, BAKER CORRECTIONAL INSTITUTION, et al.,

*Respondents*.
_______________________________/

# ORDER

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed an amended *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on June 1, 2026.[1] (*See generally* Doc. 9).[2]

---

[1] Petitioner filed his initial petition on April 30, 2026. (*See generally* Doc. 1).

[2] At the time Petitioner filed this case, he was housed at Baker Correctional Institute in Sanderson, Florida. (*See* Doc. 9 at 1). According to ICE's website, he is currently housed at a detention facility in California. *See* Online Detainee Locator System, ICE, available at https://locator.ice.gov/odls/#/search (last visited Aug. 5, 2026). Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g.*, *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

Petitioner argues, among other things, that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[3] (*See id.* at 2, 6–7). He asks the Court to order his release. (*Id.* at 7).

The Federal Respondents filed a response in opposition to the amended petition. (*See generally* Doc. 14). According to the Federal Respondents, Petitioner does not explain why his removal is not significantly likely to occur in the reasonably foreseeable future. (*Id.* at 5). The Federal Respondents also provide a declaration from a deportation officer that sets forth what ICE represents to be evidence of a significant likelihood of removal in the foreseeable future. (*See generally* Doc. 14-5). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (*See generally* Doc. 13). Petitioner filed a reply. (*See generally* Doc. 15). Upon review of the parties' filings, the Court finds that the amended petition must be granted.

---

[3] Although Petitioner does not cite *Zadvydas*, his allegations resemble the language used in *Zadvydas*. In addition, the Federal Respondents understand the amended petition to assert a *Zadvydas* claim. This Court shares that understanding. *See United States v. Ogiekpolor*, 122 F.4th 1296, 1304 (11th Cir. 2024) ("[Courts] liberally construe *pro se* filings.").

## I.

Petitioner, a citizen of Cuba, first entered the United States in January 2019.[4] (Doc. 14-1 at 1; Doc. 14-2 at 2). An immigration judge ordered Petitioner removed on May 31, 2019. (Doc. 14-2 at 2; Doc. 14-3 at 2). On August 30, 2019, ICE removed Petitioner to Cuba. (Doc. 14-2 at 2). Petitioner reentered the United States on November 21, 2022. (*Id.* at 1; Doc. 14-5 at 2). Upon reentry, he was arrested, and his prior order of removal was reinstated. (Doc. 14-5 at 2). On November 19, 2025, ICE reencountered Petitioner and took him into immigration custody. (Doc. 9 at 4).

On July 10, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> The [P]etitioner is the subject of a final order dated May 31, 2019.
>
> . . . .
>
> The Petitioner is currently detained pursuant to INA § 241(a) at the California City Corrections Center.
>
> Repatriation has been denied by the government of Cuba. As such, ERO [(Enforcement and Removal Operations)] is continuing efforts to remove the [P]etitioner to a third country, Mexico.
>
> . . . .

[4] The records attached to the Federal Respondents' response contain internal contradictions as to the date that Petitioner initially entered the United States. While one document says that Petitioner entered the country on January 23, 2019, (*see* Doc. 14-1 at 1), a different document says that the entry occurred on January 24, 2019, (*see* Doc. 14-2 at 2). This minor discrepancy does not affect this Court's ruling.

> ICE intends to remove the [P]etitioner to Mexico pursuant to 237(a)(2)(A)(ii), (iii), and also, INA § 241(b)(2)(E).
>
> The [P]etitioner will begin being served a Form I-229a, Warning for Failure to Depart, and accompanying instruction sheet, on a weekly basis, allowing him the opportunity to depart.
>
> If the [P]etitioner fails to depart, he will be deemed a failure to comply, at which point, pursuant to the I-229a, ERO will "solicit permission from another country, which may be able to accept you, to enter that country to effectuate your removal from the United States."
>
> The [P]etitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office. The receiving ERO field office will then notify Mexico's Instituto Nacional de Migración (INM) of the [P]etitioner's upcoming removal to Mexico. Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.
>
> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.
>
> ICE will follow proper procedures for third-country removals for the [P]etitioner as set forth in the Guidance Regarding Third Country Removals, issued by the DHS Secretary on March 30, 2025.

(Doc. 14-5 at 2–3).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021)

("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the

Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, Petitioner was taken into ICE custody on November 19, 2025, and he filed his amended petition on June 1, 2026—over six months after his re-

detention.[5] (Doc. 9 at 4) Indeed, the Federal Respondents concede that they have detained Petitioner for over six months. (Doc. 14 at 1). Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the amended petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal was reinstated after he reentered the United States on November 21, 2022. (Doc. 14-5 at 2). He contends that he was re-detained on November 19, 2025, and his country of origin—Cuba—refuses to accept him. (Doc. 9 at 4; Doc. 15 at 2). Petitioner has now been detained for more than eight months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

In his declaration, the deportation officer concedes that Cuba has denied repatriation but maintains that "ERO is continuing efforts to remove the [P]etitioner to a third country, Mexico." (Doc. 14-5 at 2). However, the

---

[5] Although Petitioner filed his initial petition on April 30, 2026—five months and eleven days after he was re-detained, (*see generally* Doc. 1)—the Court previously explained that "[b]ecause the Court ordered Petitioner to file an amended petition, and his amended petition not only clarifies the date of his removal order but also clearly raises a *Zadvydas* claim, the Court will consider the filing date of the amended petition when calculating the six-month period," (Doc. 11 at 2).

declaration merely describes the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. Nor is there any indication about whether Mexico will provide "final acceptance" of Petitioner. (*Id.* at 3 ("Following INM's final acceptance . . . .")). Petitioner now has been in ICE custody for over eight months—more than two months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. The Clerk shall update Petitioner's address to California City Immigration Processing Center, 22844 Virginia Boulevard, California City, CA 93505.
2. Given Petitioner's transfer to a detention facility in California, the Warden's motion to dismiss (Doc. 13) is **DENIED as moot**.
3. Petitioner's amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 9) is **GRANTED** as to his *Zadvydas* claim.[6] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.
4. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

[6] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

**DONE AND ORDERED** in Jacksonville, Florida on August 10, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
David Oscar Aguila Lopez
Counsel of Record